UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

  Plaintiff,

vs.

GEORGE CORRELL,

  Defendant.

Case No.  CR04-251 RSL

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

This matter comes before the Court on the "Motion to Suppress Evidence and Memorandum of Authorities in Support" (Dkt. # 106) filed by defendant George Correll.  For the reasons set forth below, the Court denies the motion.

## I.  Background

On the afternoon of March 18, 2004, members of the West Sound Narcotics Enforcement Team ("WestNET") drove to the residence of Defendant George Correll for the purpose of conducting a "knock and talk."  The WestNET detectives parked their vehicles at the entrance to Mr. Correll's driveway, which is blocked by a locked gate bearing a "No Trespassing" sign.  The gate is surrounded on either side by an open grassy field and only obstructs vehicle access to the Correll residence; the gate is not connected to a fence or any other barrier delineating defendant's property.  After exiting their vehicles,  WestNET detective Alloway and two other law enforcement officers walked around the gate and directly to the residence.  Mr. Correll

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 1

answered Detective Alloway's knock on the front door and stepped out onto the front porch. Detective Alloway identified himself and explained to Mr. Correll that he wished to speak with him because he believed that Mr. Correll was cultivating marijuana.  Detective Alloway presented Mr. Correll with a "Voluntary Permission to Search Form" and recited the form's contents aloud.[1]  Mr. Correll stated that he understood the form, which included specific statements informing Mr. Correll that he had the right to refuse to consent to any search of the property and that he could withdraw his consent at any time.  Detective Alloway also read defendant his Miranda warnings; again, Mr. Correll indicated that he understood these rights.  After some initial reluctance, Mr. Correll spoke with the detective about the marijuana and signed the consent to search form.  WestNET detectives then searched the property and discovered marijuana and marijuana growing equipment in the garage.

      Defendant now seeks the exclusion of the abovementioned evidence on Fourth Amendment grounds.  He argues that the consent to search form was a product of an illegal trespass and a violation of his constitutional right to privacy and, accordingly, any evidence gathered as a result of the search should be suppressed.  Specifically, defendant argues that, taken together, the "No Trespassing" sign, the gate, and the lock on the gate announced to the police that they were not welcome on his property and had no right to enter without a valid

---

[1] A "Voluntary Permission to Search Form" is a form employed by Washington state law enforcement officers when conducting so-called "knock and talks."  The use of this form arose in response to the Washington Supreme Court's ruling in State v. Ferrier, 106 Wash.2d. 103 (1998), wherein the court held that "when police officers [in Washington] conduct a knock and talk for the purpose of obtaining consent to search a home, and thereby avoid the necessity of obtaining a warrant, they must, prior to entering the home, inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home. The failure to provide these warnings, prior to entering the home, vitiates any consent given thereafter." Id. at 118-19.  This holding is based on the court's ruling that article 1, section 7 of Washington's Constitution provides greater privacy protection than does the Fourth Amendment.  Presumably, Detective Alloway presented defendant with this form as a matter of course because he did not know whether defendant's case would be prosecuted in state or federal court.

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 2

search warrant. The government, for its part, contends that Mr. Correll's efforts to exclude unwanted visitors do not implicate the Fourth Amendment and therefore do not prohibit law enforcement officers from entering the property for the purpose of conducting a "knock and talk."

## II. Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. This protection also attaches to "the land immediately surrounding and associated with the home," which is known as the "curtilage." Oliver v. U.S., 466 U.S. 170, 180 (1984) (defining curtilage as "the area to which extends intimate activity associated with the sanctity of a man's home and the privacies of life") (internal citations omitted)). The scope of the curtilage is an "essentially factual" inquiry, U.S. v. Depew, 8 F.3d 1424, 1426 (9th Cir. 1993), and is determined by "factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." U.S. v. Dunn, 480 U.S. 294, 300 (1987). Four such factors are particularly relevant to the curtilage inquiry: (1) the proximity to the home of the area claimed to be curtilage; (2) whether the claimed area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation of people passing by. Id. at 301.

While the Fourth Amendment's umbrella shields a home's curtilage from warrantless searches, it does not afford the same protection to so-called "open fields." See U.S. v. Capps, 435 F.2d 637, 640 (9th Cir. 1970).[2] The open fields doctrine is predicated upon the recognition that one does not have a constitutionally protected expectation of privacy in the property outside of the curtilage. See Hester v. U.S., 265 U.S. 57, 59 (1924). Notably, the legitimacy of a person's expectation of privacy is not determined on a subjective, case by case basis; "[r]ather,

---

[2] The term "open fields" is interpreted liberally; to qualify as an open field, a location "need be neither 'open' nor a 'field' as those terms are used in common speech." Oliver, 466 U.S. at 180 n.11.

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 3

the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." Oliver, 466 U.S. at 182-83.  That is, the Fourth Amendment protects "only those expectations that society is prepared to recognize as reasonable."  Id. at 177 (internal citations omitted).

Just as the Fourth Amendment does not necessarily protect all corners of one's property, so too is it not coextensive with the common law of trespass.  See id. at 183 ("The law of trespass . . . forbids intrusions upon land that the Fourth Amendment would not proscribe"). Consequently, what might constitute a trespass under the common law is not automatically a violation of the constitutional right to privacy.  See id. ("trespass law extends to instances where the exercise of the right to exclude vindicates no legitimate privacy interest").

**A.   Analysis**

With the foregoing principles in mind, the Court turns to the specific facts of this case. Under the circumstances the Court need not determine whether Mr. Correll's "No Trespassing" sign extended the curtilage to the gate blocking the driveway because even if the WestNET officers' approach to defendant's home required them to enter the property's protected curtilage, the entry for the purpose of conducting a "knock and talk" did not interfere with defendant's legitimate expectations of privacy.[3]  Therefore, no violation of the Fourth Amendment occurred.

---

[3] Because the Court concludes that a finding that the entirety of defendant's property is protected curtilage is immaterial to the outcome of this case, it need not address at length defendant's reliance on United States v. Roberts, 747 F.2d 537 (9th Cir. 1984).  In the interests of clarity, however, it is worth noting that defendant's reliance is misplaced.  In Roberts, the Ninth Circuit was asked to determine whether or not "No Trespassing" and "Private Property Keep Out" signs are enough to turn a shared, unobstructed, private road into protected curtilage.  Id. at 542.  The court held that such a road is akin to an open field and not within the curtilage; consequently, the defendants' "asserted expectation of privacy in the road is unreasonable by society's standards." Id. at 541.  Based on this holding, defendant urges the Court to find that Mr. Correll's "No Trespassing" sign, in concert with his private driveway and locked gate, transformed the entirety of his property into protected curtilage by creating an objectively reasonable expectation of privacy.  This is a strained reading of the case.  Nowhere does Roberts suggest that a law enforcement officer is constitutionally prohibited from parking his vehicle at an obstruction in the road, walking around the obstruction, and proceeding directly to a person's residence for the purpose

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 4

### 1. The Locked Gate & the "No Trespassing" Sign

To begin, even if one assumes that the WestNET officers committed a trespass by walking around the locked gate and the "No Trespassing" sign, that does not mean that they also committed a Fourth Amendment violation. While the law of trespass recognizes an interest in property, "it does not follow that the right to exclude conferred by trespass law embodies a privacy interest also protected by the Fourth Amendment. To the contrary, the common law of trespass furthers a range of interests that have nothing to do with privacy and that would not be served by applying the strictures of trespass law to public officers." Oliver, 466 U.S. at 184 n.15. The question, then, is not whether the officers trespassed, but whether the expectations defendant attached to the barriers in his driveway are the type "that society is prepared to recognize as reasonable." Id. at 177. A close analysis of the case law demonstrates that defendant's "No Trespassing" sign across the locked gate does not create an objectively reasonable expectation of privacy and, accordingly, does not prevent the kind of "knock and talk" employed by the officers. See id. at 183 n.13 ( "Certainly the Framers did not intend that the Fourth Amendment should shelter criminal activity wherever persons with criminal intent choose to erect barriers and post 'No Trespassing' signs").

### 2. The "Knock and Talk" Procedure

In U.S. v. Davis, 327 F.2d 301 (9th Cir. 1964), the Ninth Circuit pronounced the general rule governing "knock and talk" procedures:

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly or peaceably, at high noon, to walk up the steps and knock on the door of any man's 'castle' with the honest intent of asking questions of the occupant thereof . . . .

Id. at 303. This rule, which "has now become a firmly-rooted notion in Fourth Amendment

---

of conducting a "knock and talk," and the Court will not read such a rule into it.

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 5

jurisprudence," U.S. v. Cormier, 220 F.3d 1103, 1109 (9th Cir. 2000), permits law enforcement personnel to enter an area protected for intimate activities for the purpose of carrying out a "knock and talk."

Defendant does not challenge the legality of the actual "knock and talk" conducted by the WestNET officers.  Instead, he contends that the gated driveway and the "No Trespassing" sign constituted an "express order against any possible trespass" such that merely by entering his property, the officers violated his constitutional right to privacy.  Motion at 5.  In support of this proposition, defendant cites U.S. v. Depew, 8 F.3d 1424 (9th Cir. 1993).  The Depew panel opined that "[t]he posting of 'No Trespassing' signs is significant in terms of constituting an effort to protect the inner areas of a parcel from observation."  Id. at 1428.   Contrary to defendant's assertions, this language does not suggest that a "No Trespassing" sign constitutes an "express order against any possible trespass."  Rather, when read in context, it merely establishes that "No Trespassing" signs are relevant in terms of defining the extent of the curtilage.  Id.  Because the extent of the curtilage is of no consequence to the instant action, it follows that the above cited language lends no support to defendant.  That is, Mr. Correll's efforts to exclude others do not constitute an "express order against any possible trespass" and do not interfere with the right of law enforcement officers to "encroach upon the curtilage of a home for the purpose of asking questions of the occupants."  U.S. v. Hammett, 236 F.3d 1054, 1059 (9th Cir. 2001).

Mr. Correll's reliance on Depew is also misplaced by virtue of the factual distinctions between it and the instant action.  The defendant in Depew had taken certain steps to secure his privacy, including residing in a relatively secluded area and posting "No Trespassing" signs about his property.  A law enforcement agent suspected that the defendant was growing marijuana and, in order to gain access to the defendant's property, parked his vehicle on an adjacent highway and then snuck onto the defendant's property by crossing a ditch and scrambling up a steep embankment.  Depew, 8 F.3d at 1425.  The defendant encountered the

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 6

agent approximately fifty feet from the residence and just a few feet from the garage; from that location the agent detected the odor of marijuana.  The agent did not inform the defendant that he was an officer of the law nor did he attempt to conduct a "knock and talk."  Instead, the agent tried to gain access to the defendant's home on the pretense that he was having car trouble and needed to use the phone.  After the defendant refused to allow the agent into his home, the agent returned to his car.  The agent then obtained a search warrant that was supported by an affidavit stating that he smelled marijuana on the property.  The warrant was executed and a search of the defendant's home revealed in excess of one thousand marijuana plants.  Id. at 1426.  The defendant moved to suppress the evidence on the grounds that the original warrantless search provided the probable cause to get the warrant.  The Ninth Circuit agreed, finding that the information gathered during the initial search was gathered in the protected curtilage, and therefore gathered in violation of the Fourth Amendment.   Id. at 1428.

     The matter at hand presents a markedly different scenario.  The WestNET officers did not sneak into the protected curtilage of Mr. Correll's home for the purpose of acquiring incriminating information, nor did they later use such information to support a warrant.  They did not attempt to conceal their identities, peer into the home, enter the garage, or sniff around the property.  To the contrary, the officers made no attempt whatsoever to gather information prior to gaining defendant's consent to do so.  They merely walked around the gate, proceeded directly to defendant's front door, clearly identified themselves and their intentions to Mr. Correll, explained his rights to him, and obtained his informed consent to search the premises.  Then, and only then, did any search take place.  Thus, the holding of Depew is inapposite to defendant's case and he cannot garner from it the type of protection he seeks.

     In sum, notwithstanding the extent of the protected curtilage of Mr. Correll's home, his rights under the Fourth Amendment were not violated when the WestNET officers entered the curtilage and conducted a classic, constitutionally permissible "knock and talk."

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 7

### III. Conclusion

For all of the foregoing reasons, defendant's "Motion to Suppress Evidence" is hereby DENIED.

DATED this 29th day of July, 2005.

*/s/ Robert S. Lasnik*

Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 8